UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/6/09
```

-------------------------------------------x
                              :

JAY EPSTEIN,
                              :

                Plaintiff,    :       06 Civ. 3788 (TPG)

        – against –         :       **OPINION**

THE CITY OF NEW YORK et al.,   :

              Defendants.  :

-------------------------------------------x

This case is brought by plaintiff Jay Epstein, a former police officer with the New York Police Department ("NYPD"), against the City of New York, the NYPD, and three NYPD officers, Lieutenants Joseph Jiminez, Jeff Rinaldi, and Francis Cole, in their individual and official capacities. Plaintiff asserts that defendants discriminated against him on the basis of his sexual orientation, retaliated against him for filing a complaint of discrimination, and caused his constructive discharge. Plaintiff's claims are brought under 42 U.S.C. § 1983, section 296 of New York's Human Rights Law, and title 8 of the New York City Administrative Code.

Defendants move for summary judgment, which plaintiff opposes. The motion is granted.

**Background**

In support of their motion, defendants submitted a memorandum of law, twenty-seven exhibits, and a Statement of Material Facts. In opposition to the motion, plaintiff submitted a memorandum of law, excerpts from the transcript of plaintiff's deposition, and a Counterstatement of Material Facts, which largely agreed with defendants' Statement of Material Facts. Plaintiff did not submit any affidavits or other evidence. The following facts are therefore taken from defendants' Statement of Material Facts and are undisputed, except where otherwise indicated.

Plaintiff is a gay male who was employed by the NYPD from July 1985 until his retirement on July 31, 2005. During his tenure with the NYPD, plaintiff never revealed to his colleagues that he was gay. The only exception to this occurred when he filed a complaint on January 21, 2005 with the NYPD's Equal Employment Opportunity ("EEO") office. Furthermore, defendants Cole and Rinaldi testified at their depositions that they did not know that plaintiff was gay, and that they in fact believed that he was dating a female colleague.

Plaintiff was assigned to a variety of police "commands" during his tenure with the NYPD. None of the transfers between commands involved a decrease in salary or rank.

In August 2001, at his request, plaintiff was assigned to the 68th Precinct. Plaintiff alleges that about half of his assignments at the 68th

- 2 -

Precinct were "not commensurate with his experience." For instance, plaintiff was required to escort prisoners and respond to calls regarding emotionally disturbed individuals; according to plaintiff, officers with his seniority typically are not given these types of duties. Plaintiff was issued three disciplinary notices during his time at the 68th Precinct. On January 4, 2003, he was cited for improperly using a private vehicle to travel to his post. On June 16, 2003, he was cited for leaving his post without permission. In September 2003, he was cited for failing to properly prepare a report. In all three instances, plaintiff declined to challenge the disciplinary notices.

In January 2004, plaintiff's supervisor, Sergeant Butler, rated him as "Below Competent" on an annual performance evaluation. The evaluation gave plaintiff "low" ratings in six of twenty-eight skill areas, and "competent" ratings in the remaining areas. In the narrative section of that evaluation, Butler referred to plaintiff as a "constant nightmare," noting that he "does not respond to emergency jobs" except when specifically directed to do so, and that he "pretends not to know how to handle certain jobs," despite being the "most tenure[d] officer in [the] squad." Butler also stated that plaintiff "tries to take the easy way out when performing his police duties," and that his colleagues "dislike working in the sector with him." In reviewing this evaluation, Butler's supervisor, Captain Aubry, noted that plaintiff did not "properly follow directives." Plaintiff, however, alleges that Butler was "forced" by

defendant Cole, Butler's supervisor, to give plaintiff artificially low ratings in this evaluation.

In March 2004, plaintiff began to request overtime assignments from his supervisors. Plaintiff was hoping to use overtime earnings to increase his income during his last year with the NYPD. Under the terms of the NYPD's pension system, this would then enhance his post-retirement income. Although plaintiff concedes that he was sometimes granted overtime, he alleges that defendants Jiminez and Rinaldi granted him fewer overtime opportunities than are usually given to officers in their last year of service.

On May 1, 2004, plaintiff was assigned to the "Prospect Park Detail" for approximately five months. Eleven other officers were transferred to this detail at the same time; NYPD records indicate that these transfers occurred to accommodate "staffing needs for the summer." During his time with this detail, there was one occasion on which he and other officers were assigned to a foot patrol during inclement weather. Although his supervisor later picked him up in a vehicle, plaintiff contends that this assignment was made for discriminatory reasons.

In June 2004, plaintiff applied for a transfer to Police Headquarters because he believed that such a transfer would enable him to earn more overtime. However, despite Aubry's recommendation,

- 4 -

which stated that plaintiff was "a seasoned veteran," was "always prompt for roll call," and "has good overall activity," the transfer was denied.

On September 30, 2004, plaintiff's supervisors at Prospect Park issued an evaluation criticizing plaintiff's performance during his time with the Prospect Park detail.  The evaluation stated that plaintiff "often does not retain information concerning his assignments" and "often needs clarification of written and verbal communications."  It further stated that he "often questions directives of his supervisors" and "shows little concern for the feelings of his peers."  Finally, it stated that plaintiff's "performance is marginal," that plaintiff "displays limited ability," and that plaintiff sometimes "seems unwilling to perform his duties."  The reviewer of the evaluation reaffirmed its contents, noting that plaintiff had been "unable to gain the respect of both his peers and supervisors" and recommending that plaintiff return to his permanent command.

On October 14, 2004, plaintiff was notified that he was being placed in the NYPD's "Level II Performance Monitoring Program."  Officers are placed in this program when they receive negative performance evaluations.  The program involves enhanced supervision and monitoring of participating officers.

On October 27, 2004, plaintiff was returned to the 68th Precinct. On November 30, 2004, plaintiff was issued an evaluation for his performance from December 16, 2003 through May 4, 2004.  The

evaluation noted that plaintiff required "constant direction and prompting," was unable to independently "determine a proper course of action" in response to situations, and "exhibits little if any initiative." In reviewing the evaluation, defendant Cole reaffirmed these findings. In December 2004 and January 2005, plaintiff was issued additional evaluations that criticized his skills, arrest activity, and response time.

On January 21, 2005, plaintiff was disciplined for failing to respond to an order to tow a vehicle. The same day, he filed a discrimination complaint with the Police Department EEO office. The complaint asserted that he received "rookie" assignments, unfair evaluations, and insufficient overtime as a result of his sexual orientation. Plaintiff was not fully interviewed about his complaint until January 25. After investigating plaintiff's allegations, the EEO determined on February 24 that they did not rise to the level of employment discrimination.

On March 7, 2005, plaintiff was issued a disciplinary notice for failing to properly investigate a burglary.

On March 15, 2005, he filed a second complaint with the EEO. The complaint asserted that the January 21 and March 7 disciplinary notices were issued in retaliation for plaintiff's filing the first EEO complaint on January 21, although plaintiff conceded that he had not told anyone that he had filed the EEO complaint.

On July 31, 2005, plaintiff retired from the NYPD.

- 6 -

## **Discussion**

To withstand a motion for summary judgment, plaintiff's claims
must survive the burden-shifting framework established by McDonnell
Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Although this
framework was initially established for Title VII claims, it is also used for
claims under § 1983, New York state law, and New York City regulations,
including claims of retaliation. Patterson v. County of Oneida, 375 F.3d
206, 226-27 (2d Cir. 2004); Demoret v. Zegarelli, 451 F.3d 140, 152 (2d
Cir. 2006); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir.
1998); Landwehr v. Grey Adver. Inc., 211 A.D.2d 583 (1st Dep't 1995).

Summary judgment may be granted if there is no genuine issue
as to any material fact, such that the movant is entitled to judgment as a
matter of law. Fed. R. Civ. P. 56(c). In making this determination, the
court must draw all justifiable inferences in favor of the non-movant.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, the
non-movant is obligated to "set out specific facts showing a genuine
issue for trial," and "may not rely merely on allegations" to support his
opposition to the motion. Fed. R. Civ. P. 56(e)(2).

Under the McDonnell Douglas framework, the plaintiff has the
initial burden of establishing a prima facie case of discrimination by
demonstrating membership in a protected class, satisfactory job
performance, an adverse employment action, and conditions giving rise
to an inference of discrimination or retaliation. Demoret, 451 F.3d at

- 7 -

151; Mathirampuzha v. Potter, 548 F.3d 70, 78-79 (2d Cir. 2008);

Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993).

An adverse employment action means a materially adverse change in the terms and conditions of employment. Mathirampuzha, 548 F.3d at 78-79. Such a change must be more disruptive than merely an alteration of job responsibilities. Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004). Material changes may include termination, demotion, decrease in salary or benefits, or significantly diminished material responsibilities. Id.

If the plaintiff is able to make out a prima facie case, the burden shifts to the defendants, who must articulate a legitimate, nondiscriminatory reason for their actions. Demoret, 451 F.3d at 151. Once the defendants have identified such a reason, a plaintiff can only defeat summary judgment by offering admissible evidence sufficient to show that the "employment decision was more likely than not based in whole or in part on discrimination." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997). However, if "the plaintiff's evidence was barely sufficient to make out a prima facie case, it may not be sufficient to establish discrimination after the defendant has proffered a neutral rationale." Id.

Regarding the elements necessary to make out a prima facie case, it will be assumed that plaintiff was a member of a protected class. The other elements require discussion and will be dealt with in this order:

- 8 -

first, adverse employment action; second, job performance; third, inference of discrimination.

First, the actions that plaintiff complains of were not materially adverse changes in the terms and conditions of his employment. Plaintiff was not terminated or demoted, his salary and benefits were not reduced, and he was not given significantly diminished responsibilities. Plaintiff's belief that he was not given sufficiently attractive assignments does not show that there were materially adverse changes in the conditions of his employment. Nor has plaintiff offered any evidence, other than his own testimony, that he actually received less prestigious assignments than other officers with similar experience. To the contrary, he concedes that other officers were often given the same assignments that he was.

Similarly, plaintiff's transfers to the 68th Precinct and to the Prospect Park detail did not involve any material adverse changes in the terms or conditions of his employment. Plaintiff retained the same rank and salary. Plaintiff's negative performance evaluations and assignment to the Level II Performance Monitoring program did not materially alter the terms or conditions of his employment; indeed, since these appear to have been designed to help improve his performance, they were not even "adverse" changes. Finally, plaintiff's supervisors were not required to assign him as much overtime as he wanted, and their failure to do so did not constitute a material adverse change. Moreover, plaintiff has offered

no evidence, beyond his own conclusory testimony, that other officers
were actually given overtime more often than he was.

Second, plaintiff has not established that his job performance
was satisfactory. The disciplinary notices and performance evaluations
clearly demonstrate that plaintiff failed to perform his duties adequately,
at least beginning in 2003, when his performance was rated as "below
competent." Plaintiff's contention that the author of this evaluation was
forced to write a negative evaluation is not credible. The evaluations
show that plaintiff failed to display the skills, initiative, and work ethic
expected by his supervisors. Although plaintiff disagrees with these
evaluations, he has offered no admissible evidence, beyond his own
conclusory deposition testimony, that would show that there is any
genuine issue of fact with regard to whether his job performance was
satisfactory.

Third, plaintiff has failed to offer any evidence of substance that
would support an inference of discrimination. Although plaintiff claims
to have been treated differently than other officers, again he has offered
no evidence of this, beyond his own conclusory testimony. He has
offered no evidence of any causal link between his sexuality and the
various actions of which he complains. The strongest evidence that he
has offered in this regard is his testimony that other officers told plaintiff
that his supervisors disliked him. This testimony does not establish that

- 10 -

plaintiff's sexuality had anything to do with his supervisors' alleged views of him.

Nor is there any evidence that plaintiff's colleagues actually knew that he was gay. Plaintiff admits that he never revealed his sexuality to anyone in the NYPD until he filed his first EEO complaint in January 2005. Defendants Cole and Rinaldi testified that they were not aware of plaintiff's EEO complaints, and plaintiff offers no evidence to rebut these claims.

Nonetheless, plaintiff contends that other officers knew that he was gay. This assertion is based purely on conjecture, rather than on admissible evidence that would establish a genuine factual dispute. For instance, plaintiff claims that another gay officer knew that plaintiff was gay because plaintiff "would bump into him in a club" occasionally. Plaintiff also states that he attended the "pride festival," and that he "said hello" to "one or two" officers who were on duty. He does not, however, recall who these officers were, and he concedes that he explained that he was present at the festival because he was accompanying his friends. Plaintiff also states that he was occasionally asked by colleagues whether he was married or had a girlfriend. However, there is no support for his belief that these colleagues inferred from his negative responses that he was gay.

Plaintiff also states that he believed that other officers were discussing his sexuality. Again, however, he offers no specific evidence

- 11 -

of this. He does not even claim to have heard such conversations. Plaintiff contends that two officers once asked him if he was gay, but he cannot recall the identities of these officers, and has not offered further information about that conversation. There is no basis whatsoever to infer that such discussions, comments, or inquiries involved any police officers who supervised plaintiff, evaluated him, or decided his employment assignments.

Similarly, plaintiff has offered no evidence to support his claim that the January 21, 2005 and March 7, 2005 disciplinary notices were issued in retaliation for his EEO complaint. There is no support for the idea that the officers who issued the disciplinary notices learned of the EEO complaint and acted because of that complaint. Plaintiff had been involved in a long series of disciplinary and performance problems. There is no reason to believe that the reports of January and March 2005 were not related to further performance problems.

Plaintiff has therefore not made out a prima facie case of discrimination or retaliation. However, even if he had made out a prima facie case, the evidence of his unsatisfactory job performance would suffice to show that any adverse actions taken against him were done for legitimate, nondiscriminatory reasons. In light of plaintiff's poor performance evaluations, it was legitimate for his supervisors to give him assignments that entailed minimal responsibility, to avoid giving him overtime simply to increase the amount of his pension, to issue

- 12 -

disciplinary notices, and to place him in the Level II monitoring program.
Plaintiff has offered no admissible evidence that would permit a jury to
infer that these seemingly legitimate actions were merely a pretext for
discrimination.

Plaintiff's constructive discharge claim must also be denied.  A
finding of constructive discharge requires that, as a result of the
employer's deliberate actions, the working conditions were so adverse
that a reasonable person would have felt compelled to resign.  Martin v.
Citibank, N.A., 762 F.2d 212, 221 (2d Cir. 1985).  None of the working
conditions of which plaintiff complains were of this nature.  Indeed, the
evidence, especially in the form of plaintiff's own testimony, indicates
that plaintiff planned to retire after 20 years of service because he
qualified for a pension at that point and because he wished to care for
his ailing mother.

Several of plaintiff's claims are subject to dismissal for additional
reasons.  First, as plaintiff concedes, the NYPD does not have capacity
under New York law to be sued and is therefore not a proper defendant
in this action.  See Koulkina v. City of New York, 559 F. Supp. 2d 300,
315 (S.D.N.Y. 2008).  Second, according to a notice filed by defendants,
defendant Cole died on January 12, 2009.  Plaintiff has not moved to
substitute Cole's successor or representative as a defendant in this
action.  Therefore, pursuant to Federal Rule of Civil Procedure 25(a), the
claims against Cole in his individual capacity must be dismissed.  Third,

as plaintiff concedes, all claims accruing before April 17, 2003 are time-

barred, since they occurred outside the three-year limitations period

applicable to plaintiff's claims.  Patterson v. County of Oneida, 375 F.3d

206, 225 (2d Cir. 2004); N.Y. C.P.L.R. § 214.

Because plaintiff's claims are dismissed for the reasons set forth

above, the court need not reach defendants' arguments that the

individual defendants are entitled to qualified immunity and that plaintiff

has failed to show that the City is liable under the doctrine of Monell v.

Department of Social Services, 436 U.S. 658 (1978).

### Conclusion

Defendants' motion for summary judgment is granted.

SO ORDERED.

Dated:  New York, New York
        August 6, 2009

Thomas P. Griesa
U.S.D.J.